# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARCIA L. JACKSON,

            **Plaintiff,**

v.

                                        **Case No. 18-2046-DDC-TJJ**

KANSAS CITY KANSAS PUBLIC
SCHOOLS UNIFIED SCHOOL
DISTRICT NO. 500,

            **Defendant.**

---

## MEMORANDUM AND ORDER

Pro se[1] plaintiff Marcia L. Jackson brings two Title VII claims against defendant Kansas City, Kansas Public Schools Unified School District No. 500. One, plaintiff alleges that defendant[2] permitted a co-worker to sexually harass her after she reported to her supervisor that the co-worker had threatened to beat her up. Two, plaintiff alleges that defendant terminated her employment in retaliation for reporting a separate incident of sexual harassment.

Before the court are three motions. In the first one, defendant moves for summary judgment (Doc. 86). Plaintiff has responded with a Memorandum in Opposition (Doc. 92). And,

---

[1] Because plaintiff proceeds pro se, the court construes her filings liberally and holds them to "a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."); *see also Clark v. Oklahoma*, 468 F.3d 711, 713 n.1 (10th Cir. 2006). But the court does not become an advocate for the pro se party. *See Hall*, 935 F.2d at 1110. Likewise, plaintiff's pro se status does not excuse her from complying with the court's rules or facing the consequences of noncompliance. *See Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[2] In this Order, the court refers to Kansas City, Kansas Public Schools Unified School District No. 500 as either defendant or "the District."

defendant has filed a Reply (Doc. 105). But, to address defendant's Motion for Summary Judgment, the court first must resolve the two other pending motions.

The second motion challenges the Pretrial Order (Doc. 84). After Magistrate Judge Teresa J. James entered the Pretrial Order on October 1, 2018, plaintiff filed an Objection (Doc. 85). Defendant then made a two-part filing: the Clerk has categorized this filing as a Response to plaintiff's Objection and a separate Motion to Strike Plaintiff's Objection to the Pretrial Order (Doc. 89). Plaintiff then filed a Response to the defendant's Motion to Strike (Doc. 90). Defendant, in turn, filed a Reply (Doc. 91). And, plaintiff filed a Sur-reply (Doc. 97).

The final pending motion is plaintiff's Motion to Strike Affidavit and Exhibits (Doc. 94). In short, plaintiff challenges an affidavit—and the attached exhibits—that defendant has included with its Memorandum in Support its Motion for Summary Judgment. Defendant has filed a Memorandum in Opposition to plaintiff's Motion to Strike (Doc. 103).

For reasons explained below, defendant's Motion to Strike (Doc. 89) is granted. Plaintiff's Motion to Strike Affidavit and Exhibits (Doc. 94) is granted in part and the rest is denied. And, defendant's Motion for Summary Judgment (Doc. 86) is granted.

## I. Defendant's Motion to Strike Plaintiff's Objection to Pretrial Order (Doc. 89)

Plaintiff has objected to defendant's legal defenses listed in the Pretrial Order (Doc. 84). She also argues that defense counsel did not act in good faith after the court ordered defense counsel to revise the Pretrial Order following the pretrial conference on September 20, 2018. *See* Doc. 80. In response, defendant contends that its Answer (Doc. 10) contains all the defenses plaintiff has objected to in the Pretrial Order.

Under Federal Rule of Civil Procedure 16(e), the court may hold a final pretrial conference to formulate a trial plan. Fed. R. Civ. P. 16(e). Once approved by the court, the

pretrial order supersedes all pleadings and controls the subsequent course of the case. *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("When an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings because the pretrial order is the controlling document for trial." (internal quotations and citations omitted)); D. Kan. Rule 16.2(b). The court may alter the final pretrial order only "to prevent manifest injustice." Fed. R. Civ. P. 16(e); *Monfore v. Phillips*, 778 F.3d 849, 851 (10th Cir. 2015) (Gorsuch, J.) (explaining this high standard "ensure[s] everyone involved has sufficient incentive to fulfill the order's dual purposes of encouraging self-editing and providing reasonably fair disclosure to the court and opposing parties alike of their real trial intentions.").

The court overrules plaintiff's objections to the Pretrial Order. Defendant included each challenged defense in its Answer, which it filed in March 2018. Doc. 10 at 3–4; Doc. 84 at 8–10. And so, plaintiff cannot argue that defendant amended its previous pleadings by including a new defense in the Pretrial Order. *See Wilson*, 303 F.3d at 1215 ("[W]e do not normally expect to see claims or defenses not contained in the pleadings appearing for the first time in the pretrial order[.]"). The purpose of Rule 16 is to "avoid surprise, not foment it." *Id.* at 1216 (citation omitted). But, here, these defenses could not have surprised plaintiff because defendant asserted them in its Answer seven months before the court entered the final Pretrial Order. The court thus overrules plaintiff's objections to the Pretrial Order.[3]

---

[3]     The court declines to strike plaintiff's objections. Although a pretrial order supersedes all previous pleadings, it is not itself a pleading. Fed. R. Civ. P. 7(a), 12(f).

## II.    Plaintiff's Motion to Strike Defendant's Affidavit and Exhibits (Doc. 94)

Next, the court addresses plaintiff's Motion to Strike Defendant's Affidavit and Exhibits (Doc. 94).[4] Plaintiff's motion zeroes in on the affidavit of defendant's custodian of records—Susan Westfahl—and the exhibits submitted with Ms. Westfahl's affidavit. Plaintiff's Motion to Strike advances three arguments. First, plaintiff contends that the court should strike Ms. Westfahl's affidavit because defendant failed to disclose her as a witness under Fed. R. Civ. P. 26(a). Second, plaintiff asks the court to strike the 18 exhibits attached to Ms. Westfahl's affidavit because defendant failed to produce them in a timely manner. Third, reading plaintiff's motion liberally, plaintiff moves to strike Exhibits 11–14 as inadmissible because plaintiff has failed to authenticate them. The court grants plaintiff's motion in part and denies the rest.

### A.    Susan Westfahl's Affidavit

First, plaintiff contends that the court should strike Susan Westfahl's affidavit because defendant failed to disclose her as a witness under Fed. R. Civ. P. 26(a) and (e). Ms. Westfahl's affidavit primarily serves to authenticate documents—specifically, defendant attaches 18 exhibits to Ms. Westfahl's affidavit. Ms. Westfahl avers that she is the Clerk of the Board of Education and that Kansas law charges her with the care and custody of the Board of Education's records, books, and documents. Ms. Westfahl's affidavit certifies each attached exhibit as a "true and accurate copy." Doc. 87-1 at 2–5. So, plaintiff contends, the court must disregard any exhibit relying on Ms. Westfahl's affidavit.

---

[4]      A separate Motion to Strike really isn't necessary: "It suffices that the party objecting to summary judgment material simply state the objection with a brief description (akin to a speaking objection) and a citation to the Federal Rule or case upon which the objection is based, in response to the factual averment itself." *Daniels v. United Parcel Serv., Inc.*, 797 F. Supp. 2d 1163, 1172 (D. Kan. 2011). Filing a separate motion simply multiplies the parties' work, and the court's as well.

Defendant's Memorandum in Opposition (Doc. 103) concedes that it did not identify Ms. Westfahl by name in its Rule 26 disclosures. But, defendant contends, the court should excuse this omission because it is harmless and substantially justified.

Rule 26(a) requires the parties to disclose, in part, the following:

> [T]he name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Rule 26(a)(1)(A)(i). If a party fails to identify a witness in its disclosures under Rule 26(a) and (e), the court may prevent the party from using that witness to supply evidence on a motion unless the failure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Several factors influence the analysis whether a Rule 26 violation is harmless or substantially justified: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)). The party who failed to make or supplement the initial disclosure carries the burden to show the non-disclosure was harmless or justified. *Umbenhower v. Copart, Inc.*, 222 F.R.D. 672, 675 (D. Kan. 2004).

Resolving this dispute requires a brief retrospective of the case's timeline. Defendant made its initial disclosures on May 18, 2018. Doc. 19. In its initial disclosures, defendant listed "[a]ll witnesses needed to lay foundation for admission of exhibits." Doc. 94-1 at 4. The Scheduling Order gave the parties up to 40 days before the discovery deadline to supplement their initial disclosures. Doc. 17 at 2. The court directed the parties to complete discovery by

August 24, 2018.  *Id.*  So, the Scheduling Order permitted the parties to supplement their Rule 26 disclosures until July 16, 2018.  Defendant did not supplement its disclosures until December 21, 2018—more than five months after the deadline.

Defendant avers that it did not disclose Mr. Westfahl in its Rule 26 disclosures because defendant believed that the parties had agreed that authenticating affidavits would not be necessary on summary judgment.  Specifically, defendant contends that the parties agreed—for summary judgment and trial—to waive foundation and authentication objections for exhibits marked or used during depositions and any document produced in discovery.  Defendant asserts that it decided not to supplement its disclosure with authentication witnesses by the July 16 deadline based on this understanding.

The proceedings conducted at the Pretrial Conference support defendant's contention. The Pretrial Conference was held on September 20, 2018, several months after the supplemental disclosure deadline.  Under our Local Rules, the parties must try in good faith to draft a pretrial order that the judge can sign at the pretrial conference.  But, should the "parties disagree on any particulars, they are each to submit proposed language on the points in controversy, for the judge to rule on at the conference."  D. Kan. Rule 16.2(a).  The parties' proposed pretrial order included the exhibits—now contested—as stipulated exhibits.  And, the proposed order did not disclose any dispute about the stipulated exhibit list, nor did the parties submit competing proposed language.  The revisions made to the proposed pretrial order at the pretrial conference favor the conclusion that plaintiff revoked her consent to waive foundation and authentication objections during the Pretrial Conference.

To the extent defendant has violated Rule 26, the court finds the failure substantially justified.  Defendant—as the party who failed to disclose—bears the burden to show its actions

were substantially justified or harmless. *Estate of McDermed v. Ford Motor Co.*, No. 14-CV-2430-CM-TJJ, 2016 WL 1298096, at *4 (D. Kan. Apr. 1, 2016). So, defendant's arguments that plaintiff has failed to articulate how she was surprised or prejudiced incorrectly shifts the burden to plaintiff. *See, e.g.*, Doc. 103 at 2.

But, burden shifting errors aside, the court considers defendant's failure substantially justified. Several things support this conclusion. First, defendant identified—as a class—witnesses needed to lay the foundation for exhibits. And, in light of the purported agreement between the parties—permitting the parties to offer certain exhibits for summary judgment and trial without additional foundation or authentication—plaintiff revoking the agreement at the final pretrial conference created something of a Catch-22 for defendant. That is, if the parties proceeded with the understanding that authentication and foundation was not an issue, then defendant would not have supplemented its disclosures after the July amendment deadline. And so, the court declines to strike the statements in Ms. Westfahl's affidavit laying the foundation for and authenticating certain documents. The court denies the portion of plaintiff's motion challenging Ms. Westfahl's foundational assertions.

But, importantly, Ms. Westfahl's affidavit isn't limited to foundation testimony. It also includes three fact statements about Eugene Swygert—one of plaintiff's alleged harassers. Those statements address Mr. Swygert's termination from employment. Defendant asserts that it included these statements in the disputed affidavit as background, and that they are not material to its summary judgment motion. Background or not, defendant was required to disclose Ms. Westfahl if it intended to adduce testimony from her. This is the essential precept of Rule 26. Defendant didn't comply with this mandate, so the court will not consider these statements found in paragraphs 13–15 of Ms. Westfahl's affidavit. They go beyond authentication and foundation,

and plaintiff reasonably could sustain prejudice from them.  *Cf. Estate of McDermed*, 2016 WL 1298096, at *7 ("Because Plaintiffs are only identifying Biggler and Northern as foundation witnesses, the Court finds that the late disclosure of these witnesses is harmless to Defendant."); *In re Otero Cty. Hosp. Ass'n, Inc.*, No. 11-11-13686 JL, 2014 WL 184984, at *11 (Bankr. D.N.M. Jan. 15, 2014) (finding no material prejudice to party who objected to Rule 26 disclosures, which failed to name particular individuals, to the extent those individuals would be called solely to authenticate or provide foundation for exhibits).

### B.    Exhibits 1–18:  Failure to Produce

Second, plaintiff contends the court should strike the 18 exhibits attached to Ms. Westfahl's affidavit because defendant did not produce them in a timely fashion.  Plaintiff cites Fed. R. Civ. P. 37.[5]  Plaintiff argues that defendant did not disclose the exhibits attached to Ms. Westfahl's affidavit as required by Rule 26(a).

Rule 26(a) directs the parties to provide the following:

> [A] copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Rule 26(a)(1)(A)(ii).  The court understands plaintiff's motion under Rule 37(c) to make the following argument:  defendant failed to identify or disclose the exhibits attached to Ms. Westfahl's affidavit in its Rule 26(a) disclosures.  Defendant now has used these exhibits to support its Motion for Summary Judgment.  And, because defendant didn't disclose these exhibits, the court—plaintiff says—should strike them.

---

[5]    Plaintiff also cites 42 C.F.R. § 93.513.  This regulation provides guidance for individuals accused of research misconduct by the Office of Research Integrity.  This regulation does not apply to plaintiff's claims, and the court can discern no reason why it would apply here.  Certainly, plaintiff has identified none.

The court rejects plaintiff's request. In her motion, plaintiff includes a portion of defendant's initial disclosures. And, in its initial disclosures, defendant identified each of the challenged documents or provided a description by category and location of each document. Defendant complied with Rule 26(a), and the court thus denies plaintiff's Motion to Strike Exhibits 1–18 for this reason.

### C.     Exhibits 11–14:  Failure to Authenticate

Third, plaintiff objects to defendants' Exhibits 11–14. These exhibits are written statements purportedly provided by four of plaintiff's former co-workers. The statements chronicle plaintiff and Mr. Swygert's dispute on December 21, 2016. Plaintiff references D. Kan. Rule 56.1, and, construing her filing liberally, the court understands plaintiff's motion to argue that defendant has failed to authenticate these statements. *See* Doc. 94-3 at 3 (referring to the exhibits as "[f]alse statements by coworkers[.]  No affidavit or sworn under oath."). That is, plaintiff contends that the court must disregard the content of these statements because the co-workers have not filed complementary affidavits, nor do their statements comport with 28 U.S.C. § 1746 because they are not sworn "under penalty of perjury."  *See* D. Kan. Rule 56.1(d).

Defendant dismisses plaintiff's objection, arguing it has complied with Rule 56 because it attached these exhibits to Ms. Westfahl's affidavit, and, as custodian of records for the District, she properly can authenticate records in the District's possession. While this may be so, Ms. Westfahl's affidavit—the only source defendant relies on for three of the witness statements— fails to establish that these documents are self-authenticating.

Under Fed. R. Evid. 902, a document is self-authenticating as a "Certified Domestic Record" if a custodian or other qualified person certifies that the record meets the three requirements of Fed. R. Evid. 806. These requirements are that the record was (A) "made at or

near the time by . . . someone with knowledge," (B) "kept in the course of a regularly conducted activity of a business," and (C) made as "a regular practice of that activity." Fed. R. Evid. 902(11) (incorporating Fed. R. Evid. 803(6)(A)–(C)); *see also Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*, No. 03-4165-JAR, 2008 WL 53665, at *4 (D. Kan. Jan. 2, 2008) ("Business records . . . 'may be considered only if authenticated by a person through whom the exhibits could be admitted into evidence.'" (quoting *IBP, Inc. v. Mercantile Bank of Topeka*, 6 F. Supp. 2d 1258, 1263 (D. Kan. 1998))). "At a minimum the certificate should track the language of Rule 902(11) . . . , and the certificate must satisfy all elements of the requisite foundation, not merely some of them." Christopher B. Mueller & Laird C. Kirkpatrick, 5 Federal Evidence § 9:40 (4th ed. 2018).

Ms. Westfahl's affidavit fails to meet the minimum authentication requirements under Rule 902 because—even at a minimum—it does not track the language of Rule 902(11). The affidavit does not establish that the four witness statements were made at or near the time of the altercation. And, as the District custodian, Ms. Westfahl could have explained that witness statements are kept in the District's regularly conducted activities and that the statements were made as a regular practice of that activity. But, Ms. Westfahl does not assert that *these documents* meet Rule 902's standards. *Compare IBP, Inc.*, 6 F. Supp. 2d at 1263 ( "In neither his affidavit nor deposition testimony did [the employee] give any indication that the records were made contemporaneous with the controverted transaction or were kept in the ordinary course of business.") (citation omitted), *with Guang Dong*, 2008 WL 53665, at *4 (finding custodian's affidavit sufficient where it attested that custodian had reviewed the documents and they were "kept by [the business] in the regular course of its business, some of which constitute electronic mail communications which are between [the business's] employees and

representatives in the regular course of its business[]").  Thus, the handwritten witness statements are not self-authenticating under Rule 902(11).

But the court's conclusion about authentication under Rule 902(11) does not mean that defendant's other authentication efforts also fail.  Defendant has provided foundation for one of the four statements—that of Keyannah Johnson—by way of Lenora Miller's affidavit.  Lenora Miller is defendant's Executive Director of Operations, and she investigated after plaintiff reported her altercation with Mr. Swygert.  Under Fed. R. Evid. 901(b)(1), the proponent of an exhibit may authenticate an exhibit by testimony of a witness with knowledge.  And, "a document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 n.8 (9th Cir. 2002) (31 Wright & Gold, Federal Practice & Procedure:  Evidence § 7106, 43 (2000)) (alteration in original); *see also In re Harris*, 209 B.R. 990, 996 (B.A.P. 10th Cir. 1997).  Ms. Miller's affidavit testifies that she, as part of her investigation, "obtained [a] statement from Keyannah Johnson, an employee who worked with Plaintiff in the Central Kitchen."  Doc. 87-4 at 4 (Miller Aff. ¶ 18).  Ms. Miller has certified that the copy of the statement attached to Ms. Westfahl's affidavit is a "true and correct" version of the statement.  *Id.*  As the recipient and user of this document, Ms. Miller provided the minimal requirement of Fed. R. Evid 901(a), *i.e.*, defendant has "produce[d] evidence sufficient to support a finding that the [statement] is what the [defendant] claims it is."  Fed. R. Evid. 901(a).  The court thus will grant plaintiff's Motion to Strike in part and deny the rest.  In sum, the court rules that it may not consider Exhibits 11–13 or the factual averments in paragraphs 13–15 of Ms. Westfahl's affidavit.  But, the court will consider Exhibit 14, Ms. Johnson's statement.  Having decided the parties' dueling Motions to Strike, the court now turns to defendant's Motion for Summary Judgment.

### III.    Legal Standard

Summary judgment is appropriate when the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to

affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## IV. Undisputed Facts

The following facts are uncontroverted or, where controverted, are stated in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### A. Defendant's Policies

Defendant is a unified school district and governmental subdivision of the State of Kansas, organized and existing under Article 6, § 5 of the Kansas Constitution and Kan. Stat. Ann. § 72-1131. Doc. 87 at 2 (¶ 1). Defendant is governed by a publicly elected Board of Education. Doc. 87 at 2 (¶ 2).

Defendant maintains policies adopted by its governing Board of Education prohibiting discrimination or retaliation based on race, color, religion, sex, national origin, age, handicap, or disability in admission, access, or treatment in the District's programs and activities. Doc. 87 at 2 (¶ 3); Def.'s Exs. 1–4. Specifically, defendant maintains the following policies:

- Defendant USD No. 500 maintains a policy adopted by its Board of Education prohibiting bullying in any form by any student, staff member, or parent toward a student or by a student, staff member, or parent toward a staff member on or while using school property. Doc. 87 at 2 (¶ 4); Def.'s Ex. 5.

- Defendant maintains a policy adopted by its Board of Education providing for the termination of employees by the Board of Education. Doc. 87 at 2 (¶ 5); Def.'s Ex. 6.

- Defendant's Board Policy GAAA—Equal Employment Opportunity and Nondiscrimination—provides that the Board shall not discriminate in its employment practices and policies with respect to terms, conditions, or privileges of employment

because of an individual's sex/gender, age, or any other basis prohibited by law.  Doc. 87 at 2–3 (¶ 6); Def.'s Ex. 1.  Policy GAAA also provides that inquiries about compliance may be directed to the Superintendent of Schools, 2010 N. 59th Street, Kansas City, Kansas 66104, (913) 551-3200.  Doc. 87 at 3 (¶ 7); Def.'s Ex. 1.

- Defendant's Board Policy GAAB—Complaints of Discrimination—provides that the District is committed to maintaining a working and learning environment free from discrimination or harassment due to sex/gender, age, or any other bases prohibited by law.  Doc. 87 at 3 (¶ 8); Def.'s Ex. 2.  And, Policy GAAB states that complaints of discrimination should be addressed to an employer's supervisor or to the building principal or the compliance coordinator.  Doc. 87 at 3 (¶ 9); Def.'s Ex. 2.  Complaints of discrimination will be resolved using the District's complaint discrimination procedures. Doc. 87 at 3 (¶ 10); Def.'s Ex. 2.

- Defendant's Board Policy GAAC—Sexual Harassment—provides that the District is committed to providing a positive and productive working environment, free from discrimination on the basis of sex and gender, including sexual harassment.  The District does not tolerate sexual harassment.  And, sexual harassment of District employees is prohibited.  Doc. 87 at 3 (¶ 11); Def.'s Ex. 3.  The policy also provides that complaints made under this policy will be resolved using the district's complaint procedures in policy KN.  Doc. 87 at 3 (¶ 12); Def.'s Ex. 3.

- Defendant's Board Policy GAAE—Bullying—provides for a positive and productive working environment for its staff in accordance with state law, prohibits bullying in any form by any staff member toward any staff member.  Doc. 87 at 4 (¶ 13); Def.'s Ex. 5.

- Defendant's Board Policy KN—Complaints—provides that discrimination against any individual on the basis of sex or age during employment in the District's programs and activities is prohibited.  Doc. 87 at 4 (¶ 14); Def.'s Ex. 4.  The Superintendent is designated to coordinate compliance with nondiscrimination requirements contained in Title VII of the Civil Rights Act of 1964.  Doc. 87 at 4 (¶ 15); Def.'s Ex. 5.  The policy includes both informal and formal complaint procedures with appeal available up to the Board of Education.  Doc. 87 at 4 (¶ 16); Def.'s Ex. 4.

- Defendant's Board Policy GAP—Termination—provides for termination of employment in accordance with Kansas law.  Employees may be terminated by defendant's Board of Education upon the superintendent's recommendation.  Doc. 87 at 4 (¶ 17); Def.'s Ex. 6. Any employee who has been terminated may request and be granted an opportunity to present his/her views to the Board.  The Board, in its discretion, may refer such request to a committee of the Board or a review officer appointed annually by the Board to consider

and recommend to the Board such action as they deem proper. Doc. 87 at 4 (¶ 18); Def.'s Ex. 6.

## B.     Plaintiff's Employment

Plaintiff applied for employment with the District at a Nutritional Services Job Fair held around June 14, 2016. Stacy Raith is an operations manager employed by defendant, and she attended the Nutritional Services Job Fair. Ms. Raith recommended plaintiff for employment as a production assistant to Joshua Mathiasmeier. Doc. 87-2 at 2 (Mathiasmeier Aff. ¶ 5). Mr. Mathiasmeier is the Director of Nutritional Services for the District. Mr. Mathiasmeier passed on the recommendation to employ plaintiff as a production assistant to defendant's human resources department for processing. Doc. 87-2 at 3 (Mathiasmeier Aff. ¶ 6). The recommendation was approved by defendant's Board of Education at the Board's meeting on July 19, 2016. Plaintiff's employment was effective on August 8, 2016. Doc. 87 at 5 (¶ 23); Def.'s Ex. 8. Plaintiff was 64 years old when she began working for the District. Doc. 1 at 3 (Compl. ¶ 9).

At the start of her employment, plaintiff was assigned to work at defendant's Central Kitchen. Doc. 87-2 at 3 (Mathiasmeier Aff. ¶ 7). Around September 12, 2016, plaintiff was transferred to work at Banneker Elementary School to learn a different position. Doc. 87-2 at 3 (Mathiasmeier Aff. ¶ 8); Doc. 87-3 at 6 (Jackson Dep. 61:22–25). Around October 17, 2016, at her request, plaintiff was transferred back to work at the Central Kitchen. Doc. 87-2 at 3 (Mathiasmeier Dep. ¶ 9); Doc. 87-3 at 6 (Jackson Dep. 63:8–18). The claims in plaintiff's lawsuit are not based on any events occurring during her time at Banneker Elementary School. Doc. 87-3 at 6 (Jackson Dep. 62:21–25, 64:8–18).

### C.   September 2016 Harassment by Eugene Swygert

Beginning in September 2016, male co-worker Eugene Swygert routinely harassed plaintiff sexually.  Doc. 87-3 at 9 (Jackson Dep. 144:6–145:9).  Mr. Swygert was a driver employed by defendant.  His duties included delivering food products to various school district buildings.  Doc. 87-4 at 2 (Miller Aff. ¶ 4).  Mr. Swygert was not plaintiff's supervisor, and plaintiff did not report to Mr. Swygert through her work chain of command.  Doc. 87-4 at 3–4 (Miller Aff. ¶ 15).  Mr. Swygert's conduct included sticking out his tongue, circling it around, winking, and exhibiting inappropriate body language.  Doc. 87-3 at 10 (Jackson Dep. 145:1–12).  Plaintiff did not report Mr. Swygert's September 2016 harassment to defendant.  Doc. 87-3 at 9 (Jackson Dep. 144:16–22).

### D.   October 2016 Harassment by Keyannah Johnson

In October 2016, plaintiff filed a complaint with Ms. Miller about conduct by a female co-worker, Keyannah Johnson.  Plaintiff complained about bullying and threats by Ms. Johnson.  Specifically, Ms. Johnson said to plaintiff, "I would kick your ass if you were not 65."  Plaintiff reported this threat to Ms. Miller.[6]  Ms. Miller serves as defendant's Executive Director of Operations.  Although Ms. Miller indicated that Ms. Johnson's conduct was grounds for immediate termination, no corrective action was taken.[7]  Ms. Johnson's harassment later turned sexual—*i.e.*, plaintiff states that Ms. Johnson would rub her body against plaintiff.  According to plaintiff, Ms. Johnson appeared to derive sexual pleasure from her physical contact with plaintiff.  Plaintiff did not make any more reports to Ms. Miller or to anyone else in the District.

---

[6]   Ms. Miller denies receiving any complaints from plaintiff about Ms. Johnson.  Doc. 92 at 17 (¶ 97).

[7]   Plaintiff states that she made a complaint about Ms. Johnson bullying her, "but sexual harassment had not occurred at the time [she] made the bullying complaint."  Doc. 92 at 17.

### E. December 21, 2016, Harassment by Eugene Swygert

Plaintiff and Mr. Swygert had a verbal altercation in the Central Kitchen on December 21, 2016. The next day, plaintiff called Ms. Miller to report the incident. Doc. 87-3 at 10–11 (Jackson Dep. 145:6–18, 150:2–18). Plaintiff reported that Mr. Swygert had left the dock door open while making a delivery. Doc. 87-4 at 3 (¶ 6). Leaving the dock door open let cold air into the area where plaintiff worked. Doc. 87-4 at 2–3 (Miller Aff. ¶ 5).

During her call with Ms. Miller about the altercation, plaintiff said that she closed the dock door to keep out the cold air, and, after doing so, plaintiff and Mr. Swygert argued. Mr. Swygert had made inappropriate comments about plaintiff and told her to "shut up." Doc. 87-4 at 3 (Miller Aff. ¶ 7). According to plaintiff,[8] Mr. Swygert had become "enraged, [and] start[ed] making embarrassing comments about [me] regarding my looks, [called] me ugly, [made] statement[s] about my body parts, . . . and then Mr. Swygert stated, 'he would not stick his dick in me.'" Doc. 93-1 at 4 (Jackson Aff. ¶ 25). Mr. Swygert also told plaintiff to "shut up," and he threw a dollar bill at plaintiff, which she picked up off the floor. Doc. 87-4 at 3 (Miller Aff. ¶ 7); Doc. 87-3 at 15 (Jackson Dep. 164:23–165:10).

December 22, 2016, was the employees' last work day before their scheduled winter break. Doc. 87-3 at 11 (Jackson Dep. 151:12—152:10). Plaintiff understood that she would

---

[8] Defendant objects to plaintiff including Mr. Swygert's comments in her Opposition because plaintiff does not support the statement properly under D. Kan. Rule 56.1. *See* Doc. 105 at 4. Under Rule 56.1, "[a]ll facts . . . must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions. Affidavits or declarations must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible in evidence." D. Kan. Rule 56.1. Defendant contends that plaintiff relies on another employee's unsworn witness statement to introduce Mr. Swygert's comments. This is true. To support her fact statement about Mr. Swygert's comments, plaintiff cites employee Shannon Rinehart's witness statement. Doc. 92 at 6. But, Ms. Rinehart's witness statement does not appear in a conforming affidavit or declaration. *See* Doc 93-15 at 1. The court has no obligation to consider materials beyond those cited by the parties, but, in its discretion, may do so. Fed. R. Evid. 56(c)(3). Plaintiff's affidavit conforms with Rule 56.1, and it includes the statements Mr. Swygert allegedly made to plaintiff during the dispute. Doc. 93-1 at 4 (Jackson Aff. ¶ 25). And so, the court, exercising its discretion, includes these statements as part of the summary judgment facts.

need to write a statement about her complaint when she returned from winter break. Doc. 87-3 at 11–12 (Jackson Dep. 151:l–153:10). Plaintiff agreed to meet with Ms. Miller and provide a statement on January 4, 2017, when plaintiff returned from out of town. Doc. 87-4 at 3 (Miller Aff. ¶ 9).

On January 4, 2017, Ms. Miller placed Mr. Swygert on administrative leave pending investigation into plaintiff's allegations of inappropriate behavior. Doc. 87-4 at 3 (Miller Aff. ¶ 11). That same day, plaintiff filed a written sexual harassment complaint against Mr. Swygert based on his conduct on December 21, 2016. Doc. 87-3 at 10 (Jackson Dep. 145:13–146:15). During her January 4, 2017, meeting with Ms. Miller, plaintiff expressed concerns for her safety. So, plaintiff was placed on administrative leave with pay during the investigation. Doc. 87-4 at 3 (Miller Aff. ¶¶ 12–14).

Plaintiff understood Ms. Miller would investigate her complaint. Doc. 87-3 at 12 (Jackson Dep. 155:12–156:4). Based on her investigation, Ms. Miller determined that Mr. Swygert had engaged in inappropriate conduct in violation of defendant's policies. She recommended terminating Mr. Swygert's employment. Doc. 87-4 at 4 (Miller Aff. ¶ 17).

Other employees witnessed the exchange between plaintiff and Mr. Swygert. Doc. 87-3 at 14 (Jackson Dep. 163:2–4). Ms. Miller secured a statement from Keyannah Johnson about the incident. Doc. 87-4 at 4 (Miller Aff. ¶ 18). Ms. Johnson reported that plaintiff got upset, started "talking reckless," and called Mr. Swygert a "bastard" and "ignorant." Doc. 87-1 at 39. As a result of the investigation, Ms. Miller determined that plaintiff also had engaged in inappropriate conduct during the altercation and violated Board of Education policies. Doc. 87-4 at 4 (Miller Aff. ¶ 19).

## F.     Plaintiff's Termination

Ms. Miller called plaintiff to schedule a meeting for January 19, 2017. At that meeting, plaintiff asserts, Ms. Miller informed her that she was totally responsible for the incident and that she was terminating plaintiff's employment with the district, effective immediately.[9] Plaintiff also asserts that Ms. Miller gave plaintiff the Board of Education policies, highlighted them, and told her that she had violated all of them. Plaintiff denied violating the policies and procedures. She told Ms. Miller she thought the investigation was a witch hunt. And, plaintiff asserts, Ms. Miller did not deny this allegation. During their meeting, Ms. Miller advised plaintiff that she had the option to resign in lieu of termination, which plaintiff declined. Ms. Miller requested that plaintiff turn in her employee badge, and plaintiff complied. Last, Ms. Miller informed plaintiff that there would be a meeting a few days later to dismiss plaintiff.

Later that same day, plaintiff called Ms. Miller. Plaintiff told Ms. Miller that she intended to seek legal assistance. At some point while plaintiff was on administrative leave, plaintiff spoke with Dr. Kelli Mather, defendant's chief operating officer.[10] Plaintiff asked Dr.

---

[9]      Defendant purports to controvert this fact, arguing the legal proposition that only the Board of Education has the power to terminate an employee. Doc. 105 at 7 (¶ 56) (citing Kan. Stat. Ann. § 72-1137). The court does not view this dispute as a material one because defendant's position does not challenge plaintiff's assertion that Ms. Miller said she was terminating plaintiff's employment. So, defendant may dispute whether Ms. Miller had the authority to terminate the employment relationship. But that dispute isn't the gravamen of this summary judgment fact.

[10]     In her Statement of Facts, plaintiff contends—based on her affidavit—that she did not speak to Dr. Mather until her employment was terminated. Defendant objects, arguing that this statement directly contradicts plaintiff's earlier sworn testimony. Doc. 105 at 7. In her deposition, plaintiff testified that she spoke to Dr. Mather while she was on administrative leave. "[A]n affidavit may not be disregarded [solely] because it conflicts with the affiant's prior sworn statements. In assessing a conflict under these circumstances, however, courts disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (citation omitted). Although "unusual," the court must consider whether "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.* (citation omitted). The court concludes that plaintiff was cross-examined at her deposition; that she had access to the pertinent evidence at the time of her deposition; and that the earlier testimony does not reflect confusion as to the timeline. The court thus disregards plaintiff's later statement contradicting her deposition testimony.

Mather why she had not received a letter in writing about her termination.  Dr. Mather stated that

defendant would send a letter.  Dr. Mather also said that plaintiff could appeal the Board's

decision.

Plaintiff received a letter from Ms. Miller dated February 2, 2017.  The letter outlined the

results of the investigation.  Specifically, Ms. Miller concluded that plaintiff had violated Board

Policy GAPA.  The policy prohibits the use of profanity or abusive language; prohibits personal

conduct that is detrimental to personnel, which could cause undue disruption of work; and

prohibits conduct that may be characterized as workplace violence.  The letter also notified

plaintiff that a recommendation to terminate her employment would be forwarded to the

District's Human Resources office.

On February 13, 2017, Human Resource Advisor Jody Mitchell called plaintiff on the

telephone to schedule a *Loudermill* meeting[11] to discuss the recommendation for termination.

Plaintiff declined to meet with Ms. Mitchell until she had spoken with Ms. Miller.  Ms. Miller

and plaintiff talked on the phone 11 days later, on February 24, 2017.[12]  Plaintiff then agreed to

attend a *Loudermill* meeting on February 27, 2017, at 4:30 p.m.  Ultimately, plaintiff did not

attend this meeting.[13]

---

[11]     Based on the Supreme Court's decision *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), defendant provides "any employee recommended for termination with 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity present [her] side of the story.'"  Doc. 87 at 11 n.2 (quoting *Loudermill*, 470 U.S. at 546).

[12]     The summary judgment record establishes some dispute about whether defendant sent—and plaintiff received—a letter on February 24, 2017, about a *Loudermill* hearing.  But, the parties don't dispute that plaintiff and Ms. Miller spoke on that same day about a *Loudermill* hearing.  The court does not regard the dissonance about this letter as a material one.

[13]     Plaintiff disputes defendant's contention that she left a voicemail with the Human Resources Department on February 26, 2017.

The recommendation to terminate plaintiff's employment was presented to and approved by the Board of Education at its meeting on March 13, 2017. The Board deemed the termination decision effective on February 27, 2017. Doc. 87-1 at 45 (Ex. 17). Plaintiff was informed of the Board's decision to terminate her employment by letter dated March 14, 2017. Doc. 87-1 at 46 (Ex. 18); Doc. 87-3 at 25 (Jackson Dep. 226:20–227:13). The March 14, 2017, letter also informed plaintiff that she had the right to request a termination hearing. Doc. 87-1 at 46 (Ex. 18); Doc. 87-3 at 25–26 (Jackson Dep. 226:20–230:6). Defendant's policy allows any employee who has been terminated with the right to request an opportunity to present his or her views to a committee of the Board, which may consider and recommend to the Board action that the committee deems proper. Doc. 87-1 at 19–21 (Ex. 6). Plaintiff did not request such a hearing. Around May 2, 2017, plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC").

## V.      Title VII:  Sexual Harassment

### A.      Legal Standard

Plaintiff brings her claims under Title VII of the Civil Rights Act of 1964.[14] Section 42 U.S.C. § 2000e-2(a) of that Act makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"

> 'To establish [that] a sexually hostile work environment existed, a
> plaintiff must prove the following elements:  (1) she is a member of

---

[14]      In her EEOC Charge, plaintiff also alleged discrimination based on age. *See* Doc. 87-6 at 2. And, plaintiff reiterated this claim in her Complaint. Doc. 1 at 2–3. But, in the Pretrial Order, plaintiff only asserts theories under Title VII. *See* Doc. 84 at 6–8. Because the Pretrial Order serves as the operative pleading once entered by the court, it appears plaintiff has abandoned any age discrimination claim. And so, the court only considers plaintiff's Title VII claims.

> a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.'

*Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (quoting *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262–63 (10th Cir. 2005) (alteration in original)); *see also Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) ("'[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment.'" (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986))).

Plaintiff's briefing about her legal theory is perfunctory, but it does reveal that she bases her sexual harassment claim on the theory that her employer was negligent in light of harassment by plaintiff's co-workers. Doc. 92 at 18 ("The defendant[] should be held responsible, the defendant[] had actual notice the harassment had occurred . . . The defendant[] took no corrective action."). Because she relies on this theory of recovery, Tenth Circuit authority requires plaintiff to establish a fifth element: that the defendant-employer had actual or constructive knowledge of the hostile work environment but failed to respond adequately to notice of the harassment. *Harsco Corp.*, 475 F.3d at 1186 (citing *Adler*, 144 F.3d at 673).

Defendant does not challenge that plaintiff, as a female, belongs to a protected group or that the conduct plaintiff attributes to Mr. Swygert and Ms. Johnson was unwelcome—elements (1) and (2). Defendant presents the employer negligence element of plaintiff's claim as dispositive. That is, defendant contends that the uncontroverted facts demonstrate that, as a matter of law, it only had notice of plaintiff's sexual harassment complaint on December 21, 2016, and that defendant responded reasonably.

### B. Employer Liability

Defendant could be liable on plaintiff's sexual harassment claim under two distinct theories: "(1) vicarious liability; or (2) negligence." *Chavez-Acosta v. Sw. Cheese Co., LLC*, 610 F. App'x 722, 729 (10th Cir. 2015) (citations omitted). "Generally, the vicarious liability theory applies only when the harasser is a supervisor, while the negligence theory applies when the harasser is a co-worker." *Id.* (citing *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 755 (10th Cir. 2014)). Plaintiff's claim here contends that Ms. Johnson and Mr. Swygert sexually harassed her. Both were co-workers. It is uncontroverted that neither Mr. Swygert nor Ms. Johnson acted as plaintiff's supervisor. The court thus considers whether the District acted negligently in response to plaintiff's reports.

To establish negligence under this brand of sexual harassment, plaintiff must show that the District "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Adler*, 144 F.3d at 673 (citation omitted); *see also Macias v. Sw. Cheese Co., LLC*, 624 F. App'x 628, 637 (10th Cir. 2015). Plaintiff can show actual knowledge "where the plaintiff has reported harassment to management-level employees." *Adler*, 144 F.3d at 673 (citation omitted).

### 1. Knowledge

Plaintiff's sexual harassment claim relies on harassing incidents by two co-workers. First, plaintiff contends that Mr. Swygert, a co-worker, sexually harassed her by sticking out his tongue and circling it around; winking at plaintiff; and exhibiting inappropriate body language. Plaintiff claims that this happened in September 2016. But, plaintiff did not report Mr. Swygert's actions to any supervisor. Second, plaintiff alleges that her female co-worker— Keyannah Johnson—bullied her sometime around October 2016. According to plaintiff, Ms.

Johnson told plaintiff that if she was not 65 years old, Ms. Johnson would have "kick[ed] her ass." Plaintiff asserts she reported Ms. Johnson's threat to Ms. Miller, but Ms. Miller took no corrective action.[15] And, plaintiff alleges, Ms. Johnson's harassment continued, later becoming sexual in nature. But, plaintiff concedes, she did not report the sexually oriented harassment to anyone. Nor did plaintiff believe Ms. Johnson's threat to beat her up was sexual harassment when she reported it to Ms. Miller. Third, plaintiff contends that Mr. Swygert made offensive sexual comments to plaintiff during an argument they had with one another on December 21, 2016. Plaintiff reported this exchange with Mr. Swygert to Ms. Miller the next day.

The court finds instructive the analysis applied in *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726 (10th Cir. 2014). In *Kramer*, the plaintiff worked at the Wasatch County Sheriff's Department from 2005 to 2007. *Id.* at 731. In 2005, plaintiff worked as a bailiff, and male employees subjected her to comments about her breasts, posted sexually offensive material on workplace computers that plaintiff viewed, and participated in graphic sexual conversations that plaintiff heard. *Id.*

In 2006, plaintiff was assigned to work as a bailiff. *Id.* She worked with two other bailiffs: Rick Benson and Brad Hulse. *Id.* Mr. Benson then began a "campaign of sexual harassment" against plaintiff. *Id.* at 732. Mr. Benson started by repeatedly asking plaintiff for foot rubs. *Id.* Plaintiff's prior efforts to diffuse the situation proved ineffective; and she joked that Mr. Benson would need a doctor's note. *Id.* Mr. Benson then brought in a fake note on prescription paper and posted it on the wall. *Id.* But, plaintiff "apparently did not convey

---

[15] The parties do not dispute that Ms. Miller is a management-level employee. But the parties dispute whether plaintiff filed a written complaint with Ms. Miller about Ms. Johnson's conduct. Plaintiff contends that she informed Ms. Miller about Ms. Johnson's threat to "kick her ass" if plaintiff was younger. Ms. Miller denies that plaintiff ever filed a complaint. The court is "required to accept [the nonmovant's] version of the facts for summary judgment purposes," so the court assumes plaintiff reported Ms. Johnson's threat to Ms. Miller. *Kramer*, 743 F.3d at 731 n.1.

anything about the foot-rub harassment to the Sheriff, who testified that he was never made aware of it and that he never saw the 'doctor's note' posted on the wall." *Id.*

Mr. Benson persisted, and plaintiff grew increasingly distressed. *Id.* Plaintiff then agreed to go to Mr. Benson's house and give him a foot massage once he agreed to stop his harassment. *Id.* When plaintiff arrived, Mr. Benson sexually assaulted her. *Id.* Plaintiff did not report the assault to the Sheriff, assuming her report would be ineffective and fearing it would result in a demotion. *Id.* Then, Mr. Benson sexually assaulted plaintiff twice in his patrol car. *Id.* at 733. Plaintiff did not report the incidents to the Sheriff for the same reasons. *Id.*

Another round of harassment followed, culminating with Mr. Benson raping plaintiff. *Id.* Plaintiff did not report the rape. At some point, money went missing from the courthouse, and the Sheriff learned about Mr. Benson's persistent harassment. Specifically, the Sheriff learned that Mr. Benson repeatedly had accused plaintiff of being the thief. *See id.* at 734. Last, Mr. Benson groped plaintiff again, though, the Sheriff didn't learn about this groping. *Id.* Only later did the Sheriff hear, albeit from a secondhand source, that Mr. Benson had sexually assaulted plaintiff. *Id.* at 735.

Plaintiff sued the County under Title VII and 42 U.S.C. § 1983. *Id.* at 736. The district court granted summary judgment in the County's favor on both claims. *Id.* On the Title VII claim, the district court held that the County was not negligent and thus could not be liable for Mr. Benson's sexual harassment of plaintiff under the standards governing co-worker harassment. *Id.* The Tenth Circuit affirmed the district court's ruling granting summary judgment against the sexual harassment claim. It reasoned that—if Mr. Benson qualified as a co-worker (and not a supervisor)—the County could not be held liable on a negligence-based sexual harassment claim. As the Tenth Circuit explained,

> In assessing whether an employer was negligent in dealing with known harassment, "[a]ctual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees." *Adler*, 144 [F.3d] at 673. Although the Sheriff had actual knowledge of Ms. Kramer's jail harassment by co-workers and the money-related harassment by Sergeant Benson, he did not have actual knowledge of the sexual harassment and sexual assaults by Sergeant Benson that form the core of [plaintiff's] hostile work environment claim.

*Id.* at 755.

As *Kramer* recognizes, the content and context of a plaintiff's complaint are important components of the notice requirement. *See McGuire v. State*, No. 98-4073-SAC, 2001 WL 969058, at *5 (D. Kan. July 10, 2001) ("A plaintiff 'cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed.'" (quoting *Zimmerman v. Cook Cty. Sheriff's Dep't*, 96 F.3d 1017, 1019 (7th Cir. 1996))).  Here, the summary judgment facts establish that plaintiff did not provide notice to her employer until her report on December 22, 2016.

First, plaintiff has adduced no evidence that she reported Mr. Swygert's conduct during September 2016 to any supervisor.  Indeed, the only evidence in the summary judgment record is to the contrary.  *See* Doc. 87-3 at 9 (testimony that, as to the September 2016 harassment, plaintiff did "not [report it] to anybody in the School District itself.  I'll stand on my own on that one.").

Second, plaintiff concedes that her report about Ms. Johnson's October 2016 conduct was not a report of sexual harassment.  Plaintiff asserts that she informed Ms. Miller—the District's Executive Director of Operations—that Ms. Johnson had bullied her, *i.e.*, had threatened "to kick plaintiff's ass" if she weren't 65 years old.  But not even plaintiff viewed this report as a

complaint of sexual harassment. *See* Doc. 92 (Pl's Opposition) at 17 (¶ 97). There, plaintiff

notes that she complained about Ms. Johnson's bullying, but "Sexual harassment had not

occurred at the time [I] made the bullying complaint." *Id.* As the court reasoned in *Kramer*, a

complaint about facially neutral harassment won't suffice as a report of sexual harassment. 743

F.3d at 755 (Sheriff's notice of accusations about being a thief didn't provide plaintiff's

employer notice of unreported sexual harassment). The Seventh Circuit has explained why:

such a report doesn't give "the employer enough information to make a reasonable employer

think there was some possibility that she was being sexually harassed." *Zimmerman*, 96 F.3d at

1019.[16]

This leaves the third incident relied on by plaintiff's sexual harassment claim. In it,

plaintiff asserts that Mr. Swygert made sexually offensive comments to her on December 21,

2016. This conduct, according to plaintiff's evidence, included explicit comments about

plaintiff's "body parts" and Mr. Swygert's comment that "he would not stick his dick in

[plaintiff]." Doc. 92 at 6. The record contains admissible evidence that plaintiff reported this

conduct no later than December 22, 3017. Doc. 87-3 at 11 (Jackson Aff. 150:2–18).

In sum, plaintiff's report about the December 21 comments discharges her duty to adduce

evidence that she provided the District with "enough information to make a reasonable employer

think there was some probability that [plaintiff] was being sexually harassed." *Zimmerman*, 96

---

[16] The court recognizes that "nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). But, based on the summary judgment facts, plaintiff has not demonstrated that the threat to beat up plaintiff was motivated by sexual desire. *See Dick*, 397 F.3d at 1265 ("Thus, even for same-sex sexual harassment claims, '[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." (quoting *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994))).

F.3d at 1019.  In contrast, plaintiff has adduced no evidence that she reported sexual harassment before she complained about Mr. Swygert's conduct on December 21, 2016. [17]

### 2. Employer's Response

Given plaintiff's one complaint about sexual harassment by plaintiff's co-worker, the analysis shifts to the next issue:  Did defendant respond adequately to plaintiff's complaint?  *Adler*, 144 F.3d at 673.

The test in the Tenth Circuit is whether the "remedial and preventive action [deployed by the employer] was reasonably calculated to end the harassment."  *Adler*, 144 F.3d at 676 (internal quotations and citations omitted).  "Plaintiff bears the burden of presenting evidence establishing a genuine issue of fact that the employer's response was unreasonable."  *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000) (citation omitted).

The uncontroverted facts here demonstrate what defendant did in response to plaintiff's complaint.  Plaintiff called Ms. Miller on December 22, 2016—one day after the incident with Mr. Swygert.  December 22 was the employees' last day of work before the District's winter break.  Plaintiff testified that she understood she would need to write a statement about her complaint after winter break when she returned from out of town on January 2, 2017.  She did so.  On January 4, 2017, Mr. Swygert was placed on administrative leave pending investigation into plaintiff's allegations that he had engaged in inappropriate behavior.  As a result of this investigation, Ms. Miller determined that Mr. Swygert had engaged in inappropriate conduct that violated defendant's policies.  And, Ms. Miller recommended terminating Mr. Swygert's employment with the District.  In short, defendant removed the harasser.

---

[17]     Plaintiff does not argue the District had notice about Mr. Swygert or Ms. Johnson's conduct under a constructive knowledge theory.  *See Kramer*, 743 F.3d at 755–56.

The governing standard in our Circuit requires employers—once presented with a report of sexual harassment—to take "remedial and preventative action [that is] reasonably calculated to end the harassment." *Adler*, 144 F.3d at 676. It is impossible to imagine a remedial or preventive action more fulsome than the District's here. It received plaintiff's complaint on December 22, 2016—the day after it occurred. It so happened that this was the last work day for plaintiff and the reported harasser before the year-end semester break. Plaintiff submitted her written narrative of what had happened to her on the first day back after the break—January 2. The defendant placed the alleged perpetrator on administrative leave by January 4. This action removed him from the workplace altogether. And, after completing her investigation of the December 21 incident, Ms. Miller recommended terminating Mr. Swygert's employment for violating the District's policies.

At summary judgment, plaintiff "bears the burden of presenting evidence establishing a genuine issue of fact that the employer's response was unreasonable." *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000) (citation omitted). No reasonable jury could find defendant failed to take responsive action that was "reasonably calculated to end the harassment." *Adler*, 144 F.3d at 676. The court thus concludes that summary judgment is appropriate against plaintiff's sexual harassment claim.

## VI.     Title VII:  Retaliation

### A.     Legal Standard

Plaintiff also claims that the District illegally retaliated against her. Title VII prohibits employers from retaliating "'against an employee because she has "opposed" any practice made unlawful by Title VII,' such as creating or condoning a hostile work environment . . . ." *Lounds v Lincare, Inc.*, 812 F.3d 1208, 1233 (10th Cir. 2015) (quoting *Stover v. Martinez*, 382 F.3d

1064, 1070 (10th Cir. 2004) (in turn quoting 42 U.S.C. § 2000e-3(a))).  A retaliation claim requires the plaintiff to "establish that retaliation played a part in the employment decision," "satisfy[ing] this burden in two ways."  *Id.* (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)) (internal quotation marks and further citation omitted).  Either plaintiff "(1) offer[s] direct evidence that retaliation 'played a motivating part' in an employment decision adverse to her interests, or (2) [relies] upon circumstantial evidence under 'the familiar three-part *McDonnell Douglas* framework to prove that the employer's proffered reason for its decision is a pretext for retaliation.'"  *Id.* (citing *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008)) (further citation omitted).  Here, plaintiff has offered no direct evidence of retaliation, so the court decides the motion under the familiar *McDonnell Douglas* framework.

Under this framework, a prima facie case of Title VII retaliation requires the plaintiff to show that "(1) she engaged in a protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action."  *Johnson v. Weld Cty.*, 594 F.3d 1202, 1215 (10th Cir. 2010) (citations omitted).  If the plaintiff presents a prima facie case of retaliation, the burden shifts to the defendant-employer.  The employer must "'come forward with a legitimate, . . . non-retaliatory rationale for the adverse employment action.  If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual.'"  *Lounds*, 812 F.3d at 1234 (quoting *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011)).

## B.    Analysis

### 1.  Prima Facie Case

Defendant does not dispute the second element of plaintiff's prima facie case—plaintiff suffered an adverse action that a reasonable employee would have found material.  After all, defendant terminated plaintiff's employment.  And, defendant also concedes that plaintiff first engaged in "protected opposition to discrimination" when she reported the harassment by Mr. Swygert on December 21, 2016.  Plaintiff does not dispute this characterization.[18]  For purposes of this motion, the court assumes plaintiff has established a causal connection between her protected conduct and the employer's adverse action.  Given these conclusions, plaintiff has made her prima facie case.

The analysis then turns on the second and third stages of the *McDonnell Douglas* analysis.  That is, the court considers whether defendant has come forward with a legitimate non-discriminatory reason for plaintiff's termination.  And if so, the court then considers whether plaintiff has responded with evidence permitting a rational jury to find that the employer's non-discriminatory reason was pretextual.

### 2.  Legitimate Non-Discriminatory Reason

Defendant argues that plaintiff's claim fails because the District had provided a legitimate non-discriminatory basis for its actions.  "When an employee violates an employer's policies . . . it will often be the case that the employer can assert a legitimate, non-retaliatory reason for taking an adverse employment action against the employee."  *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1152 n.3 (10th Cir. 2008).

---

[18]    Plaintiff has framed her argument as such in her Opposition.  Doc. 92 at 1 ("Plaintiff . . . was terminated due to retaliation by the [defendant] after submitting a written complaint of sexual harassment and threats of physical harm by a male coworker.").

Defendant identifies its legitimate non-discriminatory reasons for terminating plaintiff's employment: After investigating, Ms. Miller believed that plaintiff herself had violated District policies. As part of the investigation, Ms. Miller obtained a witness statement from Ms. Johnson. The statement reported that plaintiff got upset, started "talking reckless," and called Mr. Swygert a "bastard" and "ignorant." Doc. 87-1 at 39. Ms. Miller summarized her findings about plaintiff in a written letter, which plaintiff received. This letter outlined plaintiff's violations of defendant's policies, including "[t]he use of profanity or abusive language; . . . [e]xhibiting (a) personal conduct detrimental to Unified School District No. 500 personnel, which could cause undue disruption of work or endanger the safety of persons or property of others or (b) exhibiting conduct which may be characterized as workplace violence[.]" Doc. 87-1 at 41. The court concludes that defendant has met its burden under the second prong of *McDonnell Douglas*. It has proffered a legitimate non-discriminatory basis for terminating plaintiff's employment.

### 3. Pretext

Because defendant has established a legitimate reason for plaintiff's termination, the burden shifts to plaintiff to show that a rational jury could find that the stated reason is pretextual. "Pretext can be inferred from evidence revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanation for the termination." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). The Tenth Circuit has explained that the "critical question" under this prong of the *McDonnell Douglas* framework asks whether "'a reasonable factfinder could rationally find [the employer's rationale] unworthy of credence and hence infer that the employer did not act for the asserted [non-retaliatory] reasons.'"

*Lounds*, 812 F.3d at 1234 (quoting *Crowe*, 649 F.3d at 1196) (further citation omitted).  As our Circuit has explained,

> To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong.  [The plaintiff] must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda.  This is because Title VII licenses us not to act as a "super personnel department" to undo bad employment decisions; instead, it charges us to serve as a vital means for redressing discriminatory ones.

*Johnson*, 594 F.3d at 1211.

Plaintiff, it appears, tries to discharge her burden by arguing that defendant did not follow its own policies when it terminated her employment.  Doc. 92 at 9.  And indeed, the authorities recognize that an employee may raise an inference of pretext with "'evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances.'"  *Downs v. Jostens, Inc.*, 23 F. Supp. 3d 1332, 1339 (D. Kan. 2014) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).  Specifically, plaintiff contends that the District contravened its termination policy because Ms. Miller did not offer plaintiff a *Loudermill* hearing during their meeting on January 19, 2017.

The summary judgment facts establish that the defendant, as a matter of its employment practices, provides "any employee recommended for termination with 'oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity present his side of the story.'"  Doc. 89 at 11 n.2 (quoting *Loudermill*, 470 U.S. at 546).  Here, the uncontroverted facts establish that defendant offered plaintiff a *Loudermill* hearing.

As defendant concedes, Ms. Miller did not offer plaintiff a *Loudermill* hearing at the January 19 meeting when she informed plaintiff that she was terminating her employment.

Instead, defendant contends, the uncontroverted facts show that plaintiff received a letter after the meeting on February 2, 2017, which detailed the charges against her and the recommendation for termination.[19] The letter also stated that the recommendation would be forwarded to Human Resources. The uncontroverted facts also establish that plaintiff spoke with Jody Mitchell—the District's Human Resources Advisor—on February 13, 2017, to schedule a *Loudermill* hearing. Plaintiff then spoke with Ms. Miller on February 24, 2017, and Ms. Miller presented plaintiff with a final opportunity to request a *Loudermill* hearing. In response, plaintiff agreed to attend a *Loudermill* hearing on February 27, 2017. But ultimately, plaintiff did not appear for the hearing. Then, about two weeks later, on March 13, 2017, the Board terminated plaintiff's employment. Plaintiff then received a letter, which advised her of her right to request a termination hearing within 10 days. Plaintiff did not request that hearing.

In short, plaintiff appears to argue that defendant's decision was a pretext because it did not follow its termination policies. But, the uncontroverted facts can't possibly support that argument. They show that defendant followed its policies by offering plaintiff a *Loudermill* hearing. And, plaintiff has adduced no evidence that defendant's policies require the *Loudermill* hearing to be offered during the meeting where she learns that termination has been recommended. The court concludes that plaintiff has come forward with no admissible evidence that defendant deviated from its employment policies. In short, on this basis at least, plaintiff has not raised a genuine issue of material fact whether defendant's proffered reason for termination is unworthy of belief.

---

[19] In her affidavit, plaintiff asserts that she tried to contact Ms. Miller's supervisor—Dr. Kelli Mather. Plaintiff contends that she did not speak to Dr. Mather until after the Board had terminated her employment. Defendant objects to this statement because it contradicts plaintiff's prior sworn testimony. The court agrees and thus declines to consider this portion of plaintiff's affidavit. *See supra* note 10.

Plaintiff also contends that the she did not use profanity or abusive language in violation of the District's policies. But this argument misses the mark. "'In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision*,' and 'do not look to the plaintiff's subjective evaluation of the situation.'" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 971 (10th Cir. 2017) (quoting *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011)). The court cannot assess whether the employer's decision was "wise, fair or correct, but whether [it] honestly believed [the legitimate nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs." *Johnson*, 594 F.3d at 1211 (quoting *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)) (further citation omitted).

Here, defendant has come forward with Ms. Miller's affidavit. It establishes that Ms. Miller determined—after investigating—that both Mr. Swygert and plaintiff had engaged in inappropriate conduct in violation of Board of Education policies. As part of her investigation, Ms. Miller received a witness statement from Ms. Johnson[20] indicating that plaintiff had gotten upset, started "talking reckless," and called Mr. Swygert a "bastard" and "ignorant." Doc. 87-1 at 39. During a meeting with plaintiff on January 19, 2017, and in a letter on February 2, 2017, Ms. Miller set forth the policies that, she concluded, plaintiff had violated. Viewing these undisputed facts as they appeared to Ms. Miller when she recommended termination, her recommendation was based on a good faith belief that plaintiff—along with Mr. Swygert—had violated the District's policies.

---

[20] The court notes that plaintiff contends Ms. Johnson had harassed her previously. At summary judgment, the court is not entitled to weigh the credibility of the evidence. Plaintiff argues the witness statement is false, but plaintiff has not argued that Ms. Miller did not rely on this statement in good faith. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231–32 (10th Cir. 2000); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment.").

Plaintiff makes no other arguments capable of supporting a finding of pretext.  While the court construes plaintiff's filings liberally, she has provided little argument about her retaliation theory.  In the absence of such argument, the court will not make pretext arguments for her. *Carr v. Estes Exp. Lines*, No. 14-CV-2284-DDC-GLR, 2015 WL 6806055, at *2 (D. Kan. Nov. 5, 2015) ("While plaintiff is a pro se litigant and the Court must construe his filings liberally, the Court will not serve as his advocate." (citing *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013))).  The court thus grants summary judgment for defendant against plaintiff's retaliation claim.

In sum, plaintiff hasn't demonstrated that a factual dispute exists about the pretext component of the analysis.  Given her failure to do so, there is no triable issue on plaintiff's retaliation claim.  The court thus grants defendant's Motion for Summary Judgment against plaintiff's retaliation claim.

## VII.    Conclusion

For the reasons explained above, defendant's Motion to Strike (Doc. 89) is granted. Plaintiff's Motion to Strike Affidavit and Exhibits (Doc. 94) is granted in part and the rest is denied, as set forth in this Order.  And, defendant's Motion for Summary Judgment (Doc. 86) is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Strike (Doc. 89) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Strike Affidavit and Exhibits (Doc. 94) is granted in part and the rest is denied.

**IT IS FURTHER ORDERED THAT** defendant's Motion for Summary Judgment (Doc. 86) is granted.  The Clerk shall enter summary judgment in defendant's favor on all claims.

**IT IS SO ORDERED.**

**Dated this 3rd day of May, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**